**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

NEW MEXICO LIFE RESCUE, LLC,
a New Mexico Limited Liability Company,

  Plaintiff,

v.               Civ. No. 05-937 JH/ACT

BUSINESS AIRCRAFT LEASING, INC.,
a Tennessee Corporation, and
CHARLES MULLE, Individually,

  Defendants.

### MEMORANDUM OPINION AND ORDER OF DISMISSAL

  This matter is before the Court on Defendants' motion to dismiss for improper venue [Doc. No. 8]. The primary issue raised in the motion is whether the forum selection clause contained in the written contract between Plaintiff New Mexico Life Rescue, LLC ("NMLR") and Defendant Business Aircraft Leasing, Inc. ("BALI") mandates that this case should be tried in another forum. Because the Court finds that the parties' contractual forum selection clause is applicable, mandatory, and enforceable, BALI's motion will be granted and this case will be dismissed.

### LEGAL STANDARD AND FACTUAL BACKGROUND

  "A motion to dismiss based on a forum selection clause frequently is analyzed as a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3)." *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 956 (10th Cir. 1992) (citations omitted). *Accord Kukje Hwajae Ins. Co., Ltd. v. M/V HYUNDAI LIBERTY*, 408 F.3d 1250 (9th Cir. 2005). "Consequently, the pleadings need not be accepted as true, and facts outside the pleadings properly may be considered." *Kukje Hwajae*, 408 F.3d at 1253. The Court views the facts and the evidence in the light most favorable to

the plaintiff. With that standard in mind, the facts of this case are as follows.

On March 26, 2003, NMLR and BALI[1] entered into an Aircraft Lease Agreement ("written lease agreement"). The written lease agreement provides that BALI would lease a helicopter to NMLR under terms set forth therein. *See* Contract, attached as Ex. A to BALI's memorandum brief. Among those provisions were the term of the agreement, *id*. at ¶ 2, the amount and frequency of NMLR's rent payments, *id*. at ¶ 3, restrictions on operation, *id*. at ¶ 5, the parties' stipulations regarding their respective obligations in the event that the helicopter was damaged or destroyed, *id*. at ¶¶ 6-9, and the procedures the parties would follow when dealing with an insurer, making proof of loss, and disposing of any insurance proceeds, *id*. at ¶ 10. In addition, the lease provides that in the event of litigation between the parties, Tennessee would provide both the substantive law and the venue of the litigation:

> This Agreement shall be deemed to have been made and executed in Davidson County, Tennessee and shall be interpreted and the rights and liabilities of the parties hereto determined in accordance with the laws of the State of Tennessee. . . . Should litigation *arising out of or in any way related to the terms, conditions, and/or subject of this matter of this Agreement* become necessary the parties further agree that the *exclusive* situs of such litigation will be Nashville, Davidson County, Tennessee. Furthermore, the venue shall be deemed to be proper only in Nashville, Davidson County, Tennessee, and the courts located there shall have exclusive in personam jurisdiction over said litigation.

*Id*. at ¶ 29 (emphasis added). Finally, the written lease agreement provides that it "may not be modified, amended or supplemented or otherwise changed except by a writing executed by each of the parties and designated as a modification, amendment or supplemental [sic] hereof." *Id*. at ¶ 26.

In December of 2003, the helicopter leased by BALI to NMLR crashed in Santa Fe, New

---

[1] Defendant Charles Mulle is the President and CEO of BALI.

Mexico and sustained severe damage. In early January of 2004, Defendant Charles Mulle ("Mulle") flew to Santa Fe to inspect the helicopter. According to the Affidavit of Will Ashcroft, President of NMLR, during the course of this visit and during subsequent telephone conversations, he and Mulle agreed to a new plan for disposing of the aircraft and the insurance proceeds on terms that differed from those outlined in the written lease agreement. Mulle and Ashcroft never memorialized this new plan ("the oral contract") in writing. NMLR contends that the oral contract differs from and supplants the lease agreement, and that BALI has unlawfully refused to satisfy its obligations under the oral contract. Specifically, NMLR contends that BALI improperly retained the insurance proceeds, its security deposit, and other sums due to it under the oral contract.

On September 1, 2005, NMLR filed its complaint with this Court, alleging eight separate causes of action: breach of contract, fraud and misrepresentation, conversion, promissory estoppel, violation of the New Mexico Unfair Practices Act, breach of fiduciary duty, negligence, and malicious abuse of process. On October 17, 2005, BALI filed its motion to dismiss for improper venue, arguing that under the written lease agreement the only proper venue for this dispute is in the courts of Nashville, Davidson County, Tennessee.

**DISCUSSION**

**I.     THE TERMS OF THE AGREEMENT**

The threshold issue in this case is which form of the parties' agreement controls. BALI contends that it is the forum selection clause in the written lease agreement which governs this dispute, including the venue issue. In turn, NMLR argues that it is the subsequent oral contract, which does not address the forum question, which controls the parties' respective obligations. NMLR points to the absence of a forum selection provision in the oral contract as evidence that

3

venue is proper in the United States District Court for the District of New Mexico.

Here, through the Affidavit of Will Ashcroft, NMLR set forth the terms of the oral contract between the parties. *See* Ashcroft Aff. at ¶ 8. Those terms address how the parties would deal with the insurer of the helicopter, NMLR's lienholder, disbursement of the insurance proceeds, deposits for a replacement airrcraft, acquisition of a replacement aircraft, and option to purchase the replacement aircraft "under the terms of a new lease, similar to its rights under the old lease." *Id*. Apparently the parties did not agree upon the amount of lease payments; rather, these "would, in all likelihood, be less than that which NMLR had been paying for the original helicopter. And the security deposit would be less." *Id*. at ¶ 8j. Mr. Ashcroft's affidavit is uncontroverted by other evidence in the record, and the Court assumes it to be true. NMLR argues that the oral contract "superceded" the prior written lease agreement; however, NMLR does not develop this argument or explain the manner in which the lease agreement was "superceded," leaving the Court to infer that either the oral contract modified the prior written lease agreement, or the lease agreement merged into the subsequent oral contract.[2] Under either theory, the forum selection clause in the written lease agreement survives and is applicable here.

### A.     Oral Modification

Under New Mexico law, oral modifications to a written contract are permissible under certain circumstances even where, as here, the contract specifies that modifications must be in writing. *See Medina v. Sunstate Realty, Inc*., 119 N.M. 136, 138-39, 889 P.2d 171, 173-74 (1995) (stating that a district court erred by excluding evidence of oral modification to a written contract specifying that

---

[2] Puzzlingly, BALI fails to address this question as well, simply dismissing the notion that the oral contract superceded the lease without confronting the legal merits of the issue.

all changes must be in writing); *Wendell v. Foley*, 92 N.M. 702, 705, 594 P.2d 750, 753 (Ct. App. 1979) (holding that there may be oral modification to a written contract specifying that all changes must be in writing). The law of Tennessee is similar. *See Galbreath v. Harris*, 811 S.W.2d 88, 91 (Tenn. App. 1990) ("After a written contract is made, it may be modified by the express words of the parties in writing, as well as by parol."). However, a subsequent oral modification of a written contract [must] be proven by clear and convincing evidence. *Powers v. Miller*, 1999-NMCA-080 ¶ 11, 127 N.M. 496.

For purposes of this motion, the Court assumes, without deciding, that the oral contract properly modified the written lease agreement. The question is, what are the terms of this modified agreement?

The oral modifications affected only some portions of the contract between the parties. Though NMLR and BALI may have modified their agreement as to some issues, such as insurance proceeds, deposits, and a replacement aircraft, they left many other subjects untouched. For example, there is no evidence that the parties ever modified the original two-year term of their agreement, the amount of the lease payments, conditions on operation of the helicopter, or provisions relating to maintenance and repairs, return of the aircraft, remedies upon default, assigment, renewal, attorney's fees, and financial statements. Conspicuously absent from the modification is any provision either altering or nullifying the forum selection clause in the written lease agreement.

There is also no evidence that the parties mutually agreed to extinguish all other obligations that were set forth in the written lease agreement and not touched upon by their subsequent oral contract. "A contract containing a term inconsistent with a term of an earlier contract between the same parties is interpreted as including an agreement to rescind the inconsistent term in the earlier

5

contract. The parties may or may not at the same time agree to rescind all the other provisions of the earlier contract." Restatement (First) of Contracts § 408 (1932). Because the oral contract is inconsistent with only a portion of the written lease agreement and there is no evidence that the parties intended to extinguish the uncontradicted terms, they remain in force. *See also Richardson v. Mustang Fuel Corp.*, 772 P.2d 1324, 1326 (Okla. 1989) ("Although a written contract may be altered by a second or subsequent written agreement, in order for a later contract to operate as a rescission of a former agreement, its terms must cover fully the subject matter of the original agreement.") (internal citations omitted); *Bishop v. Clark*, 54 P.3d 804, 810 (Alaska 2002) (finding that because later agreement failed to address many of the items included in the prior agreement, the parties did not intend to supersede the earlier agreement). In fact, the only available evidence on this issue—NMLR's admission in Paragraph 17(o) of its Complaint that "the remaining terms of the new lease with respect to the replacement aircraft would, generally, mirror the terms of the old lease"—confirms that the parties intended to keep all provisions, including the forum selection clause, not specifically altered by the oral contract.

Because the parties chose not to modify the original forum selection clause, it remains a valid and enforceable part of their agreement.

### B.     Doctrine of Merger

Though NMLR does not expressly make this argument, one might argue that the prior written lease agreement was merged into the subsequent oral contract. The doctrine of merger is very closely related to modification. Where an earlier agreement is in conflict with a later contract dealing with the same subject matter, the later contract controls. As this Court held in *K & V Scientific Co. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW")*, 164 F.Supp.2d 1260, 1263 (D.N.M. 2001)

(Black, J.), *rev'd on other grounds*, 314 F.3d 494 (10th Cir. 2002), "[w]hen two parties execute a second contract that deals with the same subject matter as the first, the two contracts must be interpreted together; insofar as the contracts are inconsistent, the later one prevails." (citing 6 Arthur L. Corbin, *Corbin on Contracts*, §§ 1293 and 1296 (1962)).  The New Mexico Supreme Court is in accord:

> The doctrine of merger is a contract principle that prior agreements on the same subject are presumed to be included in the final contract. Merger applies only to successive agreements that contain inconsistent terms. Under these conditions, an antecedent agreement is deemed to have merged into the more recent contract.

*Superior Concrete Pumping, Inc. v. David Montoya Const., Inc.*, 108 N.M. 401, 404 (1989) (citations omitted)). *Accord Richards v. Allianz Life Ins. Co. of N. America,* 2003-NMCA-001 ¶ 12, 133 N.M. 229.  The later agreement may make no reference to the earlier contract, yet if the new agreement contains terms that are inconsistent with the prior agreement, "the fact of inconsistency is itself a sufficient indication of intention to abrogate the old and substitute the new."  Corbin on Contracts at § 1296.  By contrast, those provisions of the prior contract that are not inconsistent with the new agreement remain valid.  *Id*.

The merger doctrine does not apply here.  As explained above, the two contracts are inconsistent on some subjects, but not inconsistent with regard to many others. The more recent oral agreement does not deal with the forum selection issue, and therefore the two contracts are not inconsistent on that topic.  The forum selection clause does not merge into the oral contract, but rather survives.

    **C.**    **Application to Tort and Statutory Claims**

NMLR argues that the forum selection clause does not apply to its various tort claims or to

its claim under the New Mexico Unfair Practices Act.[3] NMLR points to the express language of the clause, which by its terms applies to "litigation arising out of or in any way related to the terms, conditions, and/or subject matter of this Agreement ..."  Contract at ¶ 29.

Various Circuit Courts of Appeals[4] have formulated tests to determine when a contractual forum selection clause applies to tort claims.  The Third Circuit has held that where tort claims "ultimately depend on the existence of a contractual relationship" between the parties, such claims are covered by a contractually-based forum selection clause. *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983), *overruled on other grounds*, *Lauro Lines v. Chasser*, 490 U.S. 495, 109 S.Ct. 1976 (1989).  In *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir. 1988), the Ninth Circuit stated that "[w]hether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." The First Circuit has phrased its test slightly differently, explaining that "contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties." *Lambert v. Kysar*, 983 F.2d 1110, 1121-22 (1st Cir. 1993).  However, the Court need not choose a particular approach in this case, because all three are satisfied.

A reading of the complaint, the written lease agreement, and Mr. Ashcroft's affidavit reveals that NMLR's claims all arise out of BALI's alleged failure to comply with the terms of the contract

---

[3] NMLR also argues that its breach of contract claim does not arise out of and is not related to the written lease agreement because it was superceded by the subsequent oral contract. As explained above, that argument fails because most of the written lease agreement remains in full force and effect, unaltered by the oral contract.  The contract that NMLR claims was breached is the written lease agreement as modified by the oral contract.

[4] It appears that the Tenth Circuit has not reached this particular issue.

between the parties regarding the lease of the helicopter that crashed and its replacement, including the disposition of the insurance proceeds. As such, all of NMLR's claims—whether they sound in contract, tort, or statute—arise out of the same set of operative facts and depend upon the existence of the same agreement. All of the claims require that the court and the fact-finder ascertain what the terms of the contract were, to interpret the contract, and to determine whether BALI complied with its obligations therein. As such, all of NMLR's claims "arise out of" and are "related to" the terms of the agreement. *See, e.g., Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587-88, 111 S.Ct. 1522, 1524-25 (1991) (finding that forum selection clause providing that "all disputes and matters whatsoever arising under, in connection with or incident to this Contract" included a negligence (slip and fall) cause of action); *Lambert v. Kysar*, 983 F.2d 1110, 1121 (1st Cir. 1993) ("We cannot accept the invitation to reward attempts to evade enforcement of forum selection agreements through artful pleading of tort claims in the context of a contract dispute.") (internal punctuation and citation omitted); *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 223 (5th Cir.1998) (forum selection clause in a seaman employment contract providing that "any and all disputes or controversies arising out of or by virtue of this Contract" shall be litigated in the Philippines applied to tort claims brought by seamen injured aboard vessel). To hold otherwise would be to permit a plaintiff to evade his contractual choice of forum merely by electing to assert tort claims only, a form of artful pleading that the Court will not reward.

### D.     Tennessee As Exclusive Forum

Courts have classified forum selection clauses as either mandatory or permissive. *See Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1345 (10th Cir. 1992) "Mandatory forum selection clauses contain clear language showing that jurisdiction is appropriate only in the designated forum," while

9

permissive clauses do not expressly prohibit litigation in other forums. *Excell, Inc. v. Sterling Boiler & Mechanical, Inc.*, 106 F.3d 318, 321 (10th Cir. 1997) (internal quotation omitted). A determination of whether a forum selection clause is mandatory or permissive turns on the language of the clause itself.

The forum selection clause in this case could not be more clear. It provides that "the *exclusive* situs of such litigation will be Nashville, Davidson County, Tennessee.... the venue shall be deemed to be proper *only* in Nashville, Davidson County, Tennessee, and the courts located there shall have *exclusive* in personam jurisdiction over said litigation." (emphasis added). This language leaves no room for doubt; it unambiguously directs that no forum outside of Nashville, Davidson County, Tennessee may exercise jurisdiction over the contract dispute between BALI and NMLR. In fact, NMLR does not dispute the mandatory nature of this particular clause. Accordingly, the Court concludes that the forum selection clause is mandatory and directs that venue be laid in Nashville, Davidson County, Tennessee.

On the other hand, NMLR does suggest that this Court has the alternative of transferring this case to the Middle District of Tennessee under 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." NMLR then argues that, as between the District of New Mexico and the Middle District of Tennessee, this district is preferable. However, the Tenth Circuit has foreclosed NMLR's argument, noting that "For federal court purposes, venue is not stated in terms of 'counties.' Rather, it is stated in terms of 'judicial districts.' Because the language of the clause refers only to a specific county and not to a specific judicial district, we conclude venue is intended to lie only in state district court." *Excell*, 106 F.3d

at 321.

That is precisely the case here. The mandatory forum selection clause refers repeatedly to Davidson County, Tennessee, which under *Excell* means that venue is proper only in a state district court in that county, not a federal district that encompasses that county. *Id*. Under Section 1404(a), a federal district court may transfer a case only to another federal district court; it gives this Court no power to transfer a case to a state district court, and therefore a Section 1404 analysis does not apply here. Thus, the only remaining question is whether this Court will enforce the mandatory forum selection clause and dismiss NMLR's claims, or if it will permit the litigation to continue in the plaintiff's forum of choice, the District of New Mexico.

## II.     ENFORCEABILITY OF THE FORUM SELECTION CLAUSE

Having found that the contractual forum selection clause was neither modified by nor merged into the subsequent oral contract, that it applies to all of NMLR's claims, and that it is mandatory, the Court must next determine whether the clause should be enforced. At this point, the only way for NMLR to avoid the effect of the clause is to demonstrate it is unfair or unreasonable. *Excell*, 106 F.3d at 321.

The Supreme Court has recognized that a mandatory forum-selection clause "should control absent a strong showing that it should be set aside." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907 (1972). Similarly, the United States Court of Appeals for the Tenth Circuit has observed that "[f]orum selection provisions are 'prima facie valid' and a party resisting enforcement carries a heavy burden of showing that the provision itself is invalid due to fraud or overreaching or that enforcement would be unreasonable and unjust under the circumstances." *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 957 (10th Cir. 1992) (quoting *M/S Bremen v. Zapata*

*Off-Shore Co.*, 407 U.S. 1, 10, 15 (1972)).  "Only a showing of inconvenience so serious as to foreclose a remedy, perhaps coupled with a showing of bad faith, overreaching or lack of notice would be sufficient to defeat a contractual forum selection clause."  *Id*. at 958.  Even if minor inconvenience would result, that would not justify non-enforcement of the forum-selection clause.  *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 596-97 (1991).

Here, there is no evidence of "overreaching" by BALI or that BALI had unequal bargaining power over NMLR in the negotiation of the lease agreement.  Instead, NMLR argues that it is not in a financial position to litigate in Tennessee, and that BALI is in a better position to bear the cost of out-of-state litigation.  In support of this argument, NMLR points to the fact that Mulle flew from Tennessee to New Mexico after the helicopter crash in order to meet with Mr. Ashcroft. NMLR also relies upon rather cursory and conclusory testimony in Mr. Ashcroft's affidavit, which he states that travel and accommodation expenses, the higher costs of retaining counsel in Tennessee, and the burden of "producing critical testimony of witnesses" in Tennessee would effectively prevent NMLR from bringing its case to court.  NMLR also argues that a New Mexico trial would be "easier and more expeditious [] given the location of NMLR's witnesses and business records here."

The Court finds that Mr. Ashcroft's testimony—the only evidence that NMLR offers on the subject—regarding cost and inconvenience to be insufficient for two reasons.  First, the testimony itself is too general to offer much support for NMLR's argument.  Mr. Ashcroft offers no specific information regarding the number of witnesses from New Mexico who will testify, what their testimony will be and how it will support NMLR's claims, or the cost of having them testify in Tennessee.  He provides no testimony regarding the volume of business records in New Mexico that are relevant to the case and what the additional expense will be to produce them in Tennessee.  In

addition, Mr. Ashcroft provides no information about the number of witnesses and documents that are in Tennessee as compared to New Mexico; given that BALI is a Tennessee corporation with its principal place of business in Tennessee and Mulle is a resident of Tennessee, Complaint at ¶ 2, these may be considerable. Similarly unsupported by concrete facts is Mr. Ashcroft's allegation that the cost to NMLR of retaining counsel in Tennessee will be greater than in New Mexico.

Second, the Court finds that, without more, allegations of financial inconvenience are not enough to invalidate an other wise enforceable forum selection clause. *Bense v. Interstate Battery Sys. of Am., Inc.*, 683 F.2d 718, 722 (2d Cir. 1982) (enforcing contractual agreement to litigate in Texas, despite plaintiff's claims that expense of traveling there from Vermont would be prohibitive); *Talatala v. Nippon Yusen Kaisha Corp.*, 974 F. Supp. 1321, 1326-27 (D. Haw. 1997) (enforcing forum selection clause requiring litigation in Japan, where plaintiff supported claim that such would be cost prohibitive only with a conclusory affidavit); *Weiss v. Columbia Pictures Television*, Inc., 801 F. Supp. 1276, 1279 (S.D.N.Y. 1992) (enforcing forum selection clause forcing plaintiff to litigate in California instead of New York because "[m]ere inconvenience and expense of traveling are not, standing alone, adequate reasons to disturb the parties' contractual choice of forum."). In fact, the Supreme Court itself has expressed doubt that cost and inconvenience are ever sufficient to defeat a contractual arbitration clause, which is subject to scrutiny similar to that of a forum selection clause. *See Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 536, 115 S.Ct. 2322, 2328 (1995) ("It would be unwieldy and unsupported by the terms or policy of [the Carriage of Goods By Sea Act] to require courts to proceed case by case to tally the costs and burdens to particular plaintiffs in light of their means, the size of their claims, and the relative burden on the carrier.").

In sum, the Court finds unpersuasive NMLR's allegation that the expense and inconvenience

13

of litigating in Tennessee would deprive it of its remedy. The forum selection clause is enforceable, and NMLR's claims should be dismissed.

### III. APPLICATION OF THE FORUM SELECTION CLAUSE TO THE CLAIMS AGAINST DEFENDANT MULLE

BALI argues that, to the extent that the Court enforces the forum selection cause in favor of BALI, it should also dismiss the claims against its President and CEO, Charles Mulle, in his individual capacity. NMLR does not respond to this argument.

This Court is persuaded by the conclusion of the Ninth Circuit in *Manetti-Farrow*, where it applied a contractual forum selection clause to non-signatories (including a parent corporation, a subsidiary, and individual directors) because they were so closely related to the contractual relationship at issue. 858 F.2d at 514 n.5. The Court also notes that due to the identity of claims and issues, it would constitute a waste of judicial resources to try the claims against BALI in Tennessee while simultaneously litigating the claims against Mulle in New Mexico. Accordingly, the claims against Mulle will be dismissed as well.

**IT IS THEREFORE ORDERED** that Defendants' motion to dismiss for improper venue [Doc. No. 8] is **GRANTED** and all of Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**.

_____
**UNITED STATES DISTRICT JUDGE**